UNITED STATES of America ex rel. J. D. MacFARLANE, Attorney General of the State of Colorado, and the State of Colorado, Plaintiff,

v.

Buel HUTCHINSON, M.D., Defendant.

Civ. A. No. 80–C–1602.

United States District Court, D. Colorado.

July 23, 1981.

Gregory C. Smith, Sp. Asst. Atty. Gen., Medicaid Investigation Unit, Denver, Colo., for plaintiff.

James A. Branch, Jr., Denver, Colo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

CARRIGAN, District Judge.

Plaintiffs, J. D. MacFarlane, and the State of Colorado, bring this *qui tam* action against Buel Hutchinson, M.D., alleging that Dr. Hutchinson knowingly submitted to the United States and the State of Colorado at least fifty-eight false Medicaid claims from December, 1977, through October, 1979. Plaintiffs invoke the Federal False Claims Act, 31 U.S.C. §§ 231 and 232, as the jurisdictional basis for their claims. Defendant moves to dismiss this action for lack of subject-matter jurisdiction, arguing that this suit is based upon evidence or information that was in the possession of the United States, or one of its agencies, at the time this suit was filed on November 19, 1980. *See* 31 U.S.C. § 232(C). An evidentiary hearing was held on this motion on July 15, 1981.

### I. *General Background.*

On some unspecified date prior to the spring of 1979, the United States Office of Program Compliance began an investigation of possible Medicare fraud by Dr. Hutchinson. In the spring of 1979, the matter was referred to the Denver Office of the Inspector General, Department of Health, Education, and Welfare ("HEW"). HEW was the predecessor to the Department of Health and Human Services ("HHS"). *See* 20 U.S.C. § 3508(a). For convenience, this opinion will refer only to HHS.

HHS's investigation was supervised by Special Agent Robert E. Griffin; the field work was performed by Special Agents Everett Dahl and Luther Cromwell. Robert Joy, a United States Postal Inspector, also participated in the investigation because of

the possibility of mail fraud. This Medicare fraud investigation resulted in a criminal prosecution of Dr. Hutchinson on a four-count indictment. On June 12, 1980, Dr. Hutchinson pleaded guilty to several misdemeanor counts of filing false claims.

During HHS's Medicare fraud investigation, Special Agents Dahl and Cromwell determined that it would be useful to make a limited, collateral investigation of Medicaid claim forms submitted by Dr. Hutchinson. Cromwell requested that the Colorado Department of Social Services give HHS certain of Dr. Hutchinson's Medicaid forms. Not all such forms were sought. Dahl and Cromwell established criteria which Social Services was to use in culling Dr. Hutchinson's forms for transmittal to HHS. Sometime between November, 1979, and March, 1980, HHS received from Social Services a box containing microfilm copies of approximately 75 to 100 of Dr. Hutchinson's Medicaid claim forms.

Using these claim forms as a starting point, the HHS agents actually interviewed nine of Dr. Hutchinson's Medicaid patients and developed case files on four of those nine claims. The Medicaid claim forms not actually investigated remained at HHS's Denver offices until mid-September, 1980, when Special Agent Dahl turned them over to Colorado Bureau of Investigation Agent Wayne Willey, at Willey's request. At that time, Willey was assigned to the Colorado Medicaid Fraud Control Unit.

Willey had requested the Medicaid claim forms because Colorado state agencies were beginning their own investigation of Dr. Hutchinson.[1] As part of the state investigation, Willey asked the federal government for information on *its* investigation of Dr. Hutchinson. Willey received not only the box of microfilmed claim forms, but also HHS and Postal Service investigative reports, the four Medicaid case files, and other information. When Weld County District Attorney Robert Miller declined to accept the Colorado Medicaid Fraud Control Unit's recommendation of a state criminal prosecution against Dr. Hutchinson, Willey and the Colorado Attorney General's Office began preparing this *qui tam* action.

## II. *Specific Findings and Conclusions.*

■ Agent Willey's uncontroverted testimony was that, in preparing this *qui tam* suit, he first excluded the Medicaid claims in the four case files developed by HHS. Willey also testified, however, that all fifty-eight of the allegedly false claims at issue in this case are based on claim forms taken from the box of microfilm that was in HHS's possession from at least March through mid-September, 1980.

31 U.S.C. § 232(C) provides in part:

"The court shall have no jurisdiction to proceed with any [Federal False Claims Act *qui tam* action] whenever it shall be made to appear that such [action is] based upon *evidence or information in the possession of the United States, or any agency, officer, or employee thereof,* at the time such suit was brought [emphasis added.]"

■ Clearly, the Medicaid claim forms upon which this action is based were in HHS's possession before suit was brought. Although the plaintiffs have developed information in addition to that contained in the claim forms, Section 232(C)'s jurisdictional bar applies even when the information possessed by the United States is not a "mirror image" of that in the hands of the *qui tam* plaintiff. *United States ex rel. Joseph v. Cannon,* 642 F.2d 1373, 1377 (D.C. Cir.1981); *United States ex rel. Weinberger v. State of Florida,* 615 F.2d 1370, 1371 (5th Cir. 1980).

"More precisely, . . . [the district courts lack jurisdiction of *qui tam* actions under the Federal False Claims Act when] it is possible to say that the evidence and information in possession of the United States at the time . . . suit was brought was sufficient to enable it adequately to investigate the case and to make a deci-

1. The Colorado state investigation began after state investigators learned from a newspaper of the federal prosecution against Dr. Hutchinson.

sion whether to prosecute." *Pettis ex rel. United States v. Morrison-Knudsen Co.,* 577 F.2d 668, 674 (9th Cir. 1978); *accord, Cannon,* 642 F.2d at 1377; *Weinberger,* 615 F.2d at 1371.

By the time this *qui tam* action was brought, the allegedly false claim forms had been in HHS's possession for at least six months.[2] HHS therefore had ample opportunity to investigate the Medicaid claims, and in fact did make a limited investigation of some of those claims. Although the parties introduced evidence relating to HHS's motives in beginning and ending its Medicaid investigation, those motives are irrelevant here. Section 232(C) bars the plaintiff's *qui tam* action because HHS had possession of all fifty-eight claim forms involved in this action before it was filed, and because that possession gave the United States full opportunity to investigate the claims and decide whether to prosecute. Therefore, Dr. Hutchinson's motion to dismiss this case for lack of subject-matter jurisdiction is granted.

Accordingly,

IT IS ORDERED that this action is dismissed without prejudice, for lack of subject-matter jurisdiction. Each party shall bear his or its own costs.

---

2. Although the forms were not in HHS's possession on November 19, 1980, the date this action was filed, this Court does not read Section 232(C) so narrowly or literally as to apply it only when the United States retains documents or other information until the filing date. Section 232(C) bars a *qui tam* action when the United States, at some time prior to the *qui tam* suit's commencement, has possessed the information, and has had an opportunity to investigate the case and decide whether to prosecute. Requiring that the United States retain physical possession of the information before Section 232(C) could apply would make the district courts' jurisdiction turn on fortuitous changes in the chain of possession, and would permit happenstance to undercut the substantive policies established by Congress.